## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RONALD H. STEINBERG, | ) |
| Plaintiff, | ) )  ) |
| v. | ) 10 C 332 )  ) Judge Ronald A. Guzmán |
| ENTRUST MIDWEST, LLC, | ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff has moved for summary judgment on his breach of contract claim against defendant Entrust Midwest, LLC ("Entrust Midwest"). For the reasons provided herein, the Court grants plaintiff's motion for partial summary judgment.

### Facts

On July 31, 2008, Lynn Steinberg, Ronald Steinberg's wife, signed documents to complete an investment in Crown Forex, SA with funds from her Individual Retirement Account ("IRA"), and sent them to Julia Smith ("Smith"), an employee of Universal Brokerage, FX ("Universal Brokerage"). (Def.'s LR 56.1(b)(3)(C) Stmt. ¶ 4.) To invest IRA funds in Crown Forex, SA it is necessary to have those funds placed in a self-directed IRA, like those offered by Entrust Midwest. (*Id.* ¶ 11.) Accordingly, included in the documents Mrs. Steinberg sent to Smith was an application for a self-directed IRA with Entrust Midwest, which Smith sent to Entrust Midwest. (*Id.* ¶ 5.) Mrs. Steinberg did not provide instructions to Smith on how to wire the money from her IRA account to her self-directed IRA account at Entrust Midwest, but expected that Smith would provide the instructions and wire the money. (*Id.*) As expected, included in the documents Entrust Midwest received from Smith were wiring instructions. (*Id.* ¶ 7.) Pursuant to

those instructions, Mrs. Steinberg's money was wired to Associated Bank account number XXXXXX1705. (*Id.*)

In June 2009, Mrs. Steinberg spoke with her husband about making the same investment that she did in Crown Forex, SA. (*Id.* ¶ 17.) John Loebel, an employee of Universal Brokerage, sent Mrs. Steinberg the necessary documents to make such an investment. (*Id.* ¶ 19.) After Mr. Steinberg completed the documents for his investment, Mrs. Steinberg sent them to Smith. (*Id.* ¶ 21.) Mr. Steinberg did not know whether his wife wired the money or gave someone else instructions to do so or where the money was sent. (*Id.*)

On or about June 25, 2009, Smith sent Mr. Steinberg's signed application for a self-directed IRA to Entrust Midwest. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 5.) Sometime around June 30, 2009, Entrust Midwest accepted Mr. Steinberg's application and opened a self-directed IRA account in his name. (*Id.* ¶ 6.) The accepted application created an agreement between Entrust Midwest and Mr. Steinberg (the "Agreement").[1] (*Id.* ¶ 7.) The Agreement stated: "The account is established for the exclusive benefit of the Account holder or his/her beneficiaries. In taking action based on this authorization[,] Custodian and Administrator may act solely on the written instruction, designation or representation of the Account holder." (*Id.* ¶ 10.) The Agreement also required Mr. Steinberg to self-direct his IRA by issuing Buy or Sell Direction Letters to Entrust Midwest, which would execute the directives contained in the Letters. (*Id.*)

Entrust Midwest's account application also contained an "Interested Party Designation & Limited Power of Attorney" form, which stated: "Please complete

---

[1] Although defendant disputes this fact, the dispute is unsupported by evidence in the record as required by Local Rule 56.1(b)(3)(B).

the information below to authorize your spouse [or] financial advisor . . . to receive information about your account. Please note that this individual will have unlimited access to your account information, but they will not be able to make changes to your account." (*Id.* ¶¶ 16-17.) The form also contained a section permitting account holders to designate a person with "Limited Power of Attorney" who had the power to conduct transactions in the account holder's account. (*Id.*)

On June 25, 2009, Mr. Steinberg completed an "Interested Party Designation & Limited Power of Attorney" form, designating Smith and another representative of Universal Brokerage, Pat Kiley, as "interested parties." (*Id.* ¶¶ 18-21; Def.'s LR 56.1(b)(3)(C) Stmt. ¶ 16.) As such, Smith and Kiley had access to Mr. Steinberg's account information, but did not have authority to make changes to his account. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 19-21.)

On June 29, 2009, $230,000.00 was wired to Entrust Midwest for the benefit of Mr. Steinberg. (*Id.* ¶ 22.) Because Mr. Steinberg did not have an account with Entrust Midwest at the time, Entrust Midwest asked Smith whether the money was from a client of Universal Brokerage. (*Id.* ¶¶ 23-24.) Smith stated that the money was for a client of Universal Brokerage, Mr. Steinberg. (*Id.*)

On June 30, 2009, Melissa Twaddle of Entrust Midwest received documents and a check for $170.00 (the account creation fee) from Smith used to set up Mr. Steinberg's account at Entrust Midwest. (*Id.* ¶¶ 29, 32.) Also included with the documents was a Buy Direction Letter from Mr. Steinberg. (*Id.* ¶ 26.)

3

The Buy Direction Letter directed Entrust Midwest to invest $230,000.00 with Crown Forex, SA, St. Hubert 38, 2854 Bassecourt, P.O. Box 247, Switzerland. (*Id.* ¶ 27.)

Also included with the documents were wire instructions identical to the ones used to transfer money from Mrs. Steinberg's account. (*Id.* ¶¶ 30-31.) The instructions required Mr. Steinberg's money to be wired to Associated Bank account number XXXXXX1705. (*Id.*) Entrust Midwest followed the wire instructions it received from Smith, and transmitted $229,750.00 from Mr. Steinberg's account to account number XXXXXX1705 at Associated Bank. (*Id.* ¶ 33.) At all times relevant to this litigation, Crown Forex, LLC, a Minnesota entity, was the account owner of account number XXXXXX1705 at Associated Bank.[2] (*Id.* ¶ 34; Pl.'s Ex. 9, Associated Bank Operating Agreement, at 1.) That account had two signatories: Kiley and Smith. (Pl.'s Ex. 9, Associated Bank Operating Agreement, at 2-3.) Crown Forex, LLC is not associated with, controlled by, or held for the benefit of, Crown Forex, SA, which is based in Switzerland. (*Id.*; Pl.'s LR 56.1(a)(3) Stmt. ¶ 34.)

Prior to the date that Mr. Steinberg's money was wired, Mr. Steinberg never spoke with anyone at Entrust Midwest. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 18.) Entrust Midwest has no documents granting any entity or individual other than Mr. Steinberg authority to direct transactions in Mr. Steinberg's account.[3] (*Id.* ¶

---

[2] Although defendant disputes this fact with the Affidavit of Patrick Kiley, the Court holds that the statements in Kiley's Affidavit are inadmissible because Kiley failed to establish personal knowledge of such statements pursuant to Federal Rule of Civil Procedure 56(e). Further, the Court denies defendant's motion to strike plaintiff's Exhibit 9 because plaintiff's Affidavit of Donna L. Haugen fully complies with Federal Rule of Civil Procedure 56.

[3] Although defendant disputes this fact, it does not dispute the substance of the statement and such dispute is therefore unsupported by evidence in the record as required by Local Rule 56.1(b)(3)(B).

12.) Mr. Steinberg never expressly designated, either in writing or orally, Smith, or anyone else, as his agent. (*Id.*; Pl.'s Ex. 4, Aff. Ronald Steinberg ¶¶ 2, 4.)

## Discussion

Plaintiff has moved for summary judgment on his breach of contract claim. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant meets this burden, the non-movant cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering the motion, the court must view all evidence in the light most favorable to the non-movant. *Id.* at 255.

I.   **Breach of Contract**

Plaintiff argues that defendant breached their contract by failing to invest his assets in Crown Forex, SA pursuant to his written instruction and by following wire instructions from a third party, Universal Brokerage. It is undisputed that there is a valid contract between plaintiff and defendant. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 7.) It is also undisputed that defendant wired plaintiff's money to an account that was not owned or

controlled by Crown Forex, SA. (*Id.* ¶ 34; Pl.'s Ex. 9, Associated Bank Operating Agreement, at 1.) Defendant argues, however, that it did not breach the contract by following wire instructions from Universal Brokerage either because Mrs. Steinberg was an implied agent of Mr. Steinberg or Universal Brokerage was an apparent agent of Mr. Steinberg.

### A. Implied Actual Authority

Defendant argues that Mrs. Steinberg was Mr. Steinberg's implied agent with the authority to bind him to decisions she made regarding his investment in Crown Forex, SA. In Illinois, the status of husband and wife does not by itself establish an agency relationship between the parties. *See Sumner v. Griswold*, 86 N.E.2d 844, 847 (Ill. App. Ct. 1949). Rather, to show an implied agency relationship one must establish implied actual authority, which is actual authority proven circumstantially. *Petrovich v. Share Health Plan of Ill., Inc.*, 719 N.E.2d 756, 770 (Ill. 1990). Implied authority may be found in the parties' relationship, their actions and other relevant circumstances. *See Matthews Roofing Co. v. Cmty. Bank & Trust Co. of Edgewater*, 550 N.E.2d 1189, 1193 (Ill. App. Ct. 1990). Further, although the existence of an agency relationship is a question of fact, a court may decide this issue as a matter of law if only one conclusion may be drawn from the undisputed facts. *Churkey v. Rustia*, 768 N.E.2d 842, 845 (Ill. App. Ct. 2002).

Defendant argues that pursuant to *Petrovich* the "cardinal consideration for determining the existence of implied authority is whether the alleged agent

retains the right to control the manner of doing the work." 719 N.E.2d at 770. Defendant argues that since Mrs. Steinberg controlled her own activities through her procuring all the documents necessary to complete the transaction and sending them to Universal Brokerage, the cardinal aspect of implied agency is satisfied.

Defendant's reliance on *Petrovich* is misplaced. The *Petrovich* court held that if an individual controls her own activities she is an independent contractor, not an agent. *Id.*; *see also John Gabel Mfg. Co. v. Murphy*, 62 N.E.2d 401, 404 (Ill. 1945) (holding that an independent contractor is one who produces a given result without being controlled as to the method by which he attains the result). Therefore, under *Petrovich*, the fact that Mrs. Steinberg controlled her own behavior negates rather than supports the inference that she is Mr. Steinberg's agent.

Defendant also argues that Mrs. Steinberg's conduct and intent support an inference of implied agency. Mrs. Steinberg's understanding of what Universal Brokerage would do with Mr. Steinberg's contract, however, is irrelevant to the analysis of whether she had implied (actual) authority to alter its terms. *See, e.g.*, *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999). It is the principal's intent, not that of the agent's, that controls. *Id.*; *see Opp v. Wheaten Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (interpreting Illinois law and the Restatement (Second) of Agency and holding the same). There is no indication in the record that Mr. Steinberg intended for Universal Brokerage to give Entrust Midwest instructions to wire his money to

Crown Forex, LLC or authorize Mrs. Steinberg to tell Universal Brokerage to do so. Rather the record establishes that the parties' contract expressly prohibited Entrust Midwest from taking any action with respect to Mr. Steinberg's account without direction from him. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 23.) Because there is no evidence that Mr. Steinberg gave Mrs. Steinberg authority to change the terms of the contract on his behalf, the Court holds that defendant has not created a genuine issue of material fact that Mr. Steinberg's wife had implied authority to do so.

### B. Apparent Authority

Alternatively, defendant argues that Universal Brokerage was the apparent agent of Mr. Steinberg. Absent implied actual authority, an agent may have apparent authority when, because of the manifestations of the principal, it reasonably appears to third persons that the agent is authorized to act as the principal's agent. *See Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 184 (Ill. App. Ct. 2001). Under Illinois law, apparent agency exists if: (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and agent, the third person reasonably concluded that the party was an agent of the principal; and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *See Stathis v. Geldermann, Inc.,* 692 N.E.2d 798, 807 (Ill. App. Ct. 1998); *see also Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 673 (7th Cir. 2004); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 859 (7th Cir. 2001). Only the alleged principal's words and conduct, not those of the alleged agent, establish the

agent's authority. *See Bethany*, 241 F.3d at 859. Specifically, the "principal must do something to lead the third party to believe that the agent is authorized to act on its behalf." *Id.* at 859. The party alleging an agency relationship bears the burden of proving its existence by a preponderance of the evidence. *Sphere*, 376 F.3d at 672.

Defendant argues that Mr. Steinberg consented to Universal Brokerage's conduct of providing wiring instructions on his behalf because he signed a Buy Direction Letter that he wanted his money wired. In other words, defendant argues that the Buy Direction Letter nullified the contract provision requiring Entrust Midwest to act solely at Mr. Steinberg's direction.

The Court disagrees. The parties' contract does not state that it can be amended by the issuance of a Buy Direction Letter and the Letter itself says no such thing. On the contrary, plaintiff's Agreement with defendant explicitly required defendant to follow only plaintiff's written direction and disavowed any agency relationship between the plaintiff and Universal Brokerage. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 10.) Further, it is undisputed that plaintiff never gave a wire instruction or spoke with anyone at Entrust Midwest before money was wired from his account or that he otherwise represented to defendant that it could take action with respect to his account from anyone else. (*Id.* ¶¶ 18, 30.) *See Amcore Bank*, 759 N.E.2d at 184 (holding that only the words and conduct of the alleged principal establish the agent's authority); *C.A.M. Affiliates, Inc.*, 715 N.E.2d at 783; *see also Bethany*, 241 F.3d at 859. Therefore, there is no genuine issue of material fact that plaintiff consented, acquiesced, or made any sort of representations that defendant follow the instructions of Universal Brokerage

regarding his account at Entrust Midwest. Because the undisputed facts establish that Universal Brokerage did not have apparent authority to act for plaintiff, plaintiff's motion for partial summary judgment is granted.

## Conclusion

For the reasons set forth above, plaintiff's motion for partial summary judgment is granted [doc. no. 40] and defendant's motion to strike exhibit attached to plaintiff's reply in support of motion for partial summary judgment is denied [doc. no. 53].

**SO ORDERED**                          **ENTER: January 25, 2011**

_____
   **RONALD A. GUZMAN**
   **District Judge**